UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION and APPLIED BIOSYSTEMS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> AB SCIEX PTE. LTD. and DH TECHNOLOGIES DEVELOPMENT PTE. LTD., <br><br> Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AB SCIEX PTE. LTD.'S MOTION TO ENJOIN ARBITRATION AS AGAINST AB SCIEX PTE LTD.** <br><br> 11 Civ. 0325 (RJH) <br> ECF Case |

WILLIAMS & CONNOLLY LLP
Dane H. Butswinkas (*admitted pro hac vice*)
Tobin J. Romero (TR8896)
Katherine M. Turner (*admitted pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

*Attorneys for Defendants AB Sciex Pte. Ltd. and DH Technologies Development Pte. Ltd*

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................ 1

PROCEDURAL HISTORY…………………………………………………………………....2

ARGUMENT ........................................................................................................................... 4

I.     THIS COURT MUST DECIDE THE QUESTION OF ARBITRABILITY ......................... 4

II.    AB SCIEX IS NOT A PARTY TO THE SAPA AND THEREFORE IS NOT SUBJECT TO
       ITS ARBITRATION PROVISIONS ....................................................................................... 7

III.   AB SCIEX WILL SUFFER IRREPARABLE HARM IF PLAINTIFFS ARE NOT
       ENJOINED FROM PURSUING ARBITRATION AGAINST IT. .................................... 10

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Dedon GmbH v. Janus et Cie*, No. 10-4331-cv, 2011 WL 31868 (2nd Cir. Jan. 6, 2011) ..............5

*Di Martino v. Dooley*, No. 08 Civ. 4606(DC), 2009 WL 27438 (S.D.N.Y. Jan. 6, 2009) ..........5, 7

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)........................................................5, 8

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847 (2010) ....................................4, 5, 7

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)........................................................4, 5

*Masefield AG v. Colonial Oil Industries, Inc.*, No. 05 Civ. 2231(PKL), 2005 WL 911770
    (S.D.N.Y. Apr. 18, 2005)........................................................................................................6, 7

*Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) ....................................10

*ProShares Trust v. Schnall*, 695 F. Supp. 2d 76 (S.D.N.Y. 2010) ................................................10

*Rep. of Iraq v. ABB AG*, No. 08 Civ. 5951(SHS), ___ F. Supp. 2d ___, 2011 WL 781192
    (S.D.N.Y. Mar. 3, 2011) ............................................................................................................7

*Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008)..................................................................4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) ..............................1

*Telenor Mobile Comm'cns AS v. Storm LLC*, 584 F.3d 396 (2d Cir. 2009)...................................5

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ...............................8, 9

*UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351 (S.D.N.Y. 2010), *aff'd*, 405 F. App'x 550
    (2d Cir. 2011)........................................................................................................................10, 11

*Zarepta Chem., K.S. v. Solae, LLC*, No. 05 CV 8265, 2005 WL 4756407 (S.D.N.Y. Oct.
    26, 2005) ....................................................................................................................................10

## OTHER AUTHORITIES

1 Thomas H. Oehmke, *Commercial Arbitration* § 8.1 (2011).........................................................9

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AB SCIEX PTE. LTD.'S MOTION TO ENJOIN ARBITRATION AS AGAINST AB SCIEX PTE LTD.

Defendant AB Sciex Pte. Ltd. (AB Sciex) respectfully submits this memorandum in support of its motion to enjoin the arbitration proceedings that plaintiffs have initiated against it. The basis for enjoining the arbitration as against AB Sciex is the following undisputed fact: there is no agreement to arbitrate between plaintiffs and AB Sciex.  In their arbitration demand, plaintiffs rely solely on an agreement between one plaintiff, Life Technologies Corporation (Life Tech), and one defendant, DH Technologies Development Pte. Ltd. (DHTD), in support of their position that their claims against a second defendant, AB Sciex, are arbitrable.  But, as even plaintiffs concede, AB Sciex is not a party to that agreement.  Arbitration "is a matter of consent, not coercion."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quotations omitted).  Because AB Sciex is not a party to any arbitration agreement or to any agreement incorporating an arbitration provision by reference, and has not otherwise consented to arbitration of plaintiffs' claims, this Court should grant AB Sciex's motion to enjoin the arbitration.

## BACKGROUND

1.    AB Sciex is a party to the Trademark License Agreement (TLA), but that agreement does not include an arbitration provision.  Plaintiffs' claims against AB Sciex arise from the TLA between plaintiffs and AB Sciex, pursuant to which plaintiffs granted AB Sciex certain trademark licenses.  In their Complaint in this action, which plaintiffs have attached to their arbitration demand, plaintiffs assert that AB Sciex's alleged uses of the trademarks exceed the scope of the licenses, and bring claims for breach of the TLA, violation of the Lanham Act, trademark infringement, dilution, and unfair competition.  *See* Compl. ¶¶ 47–52, 59–78.

The TLA does not contain any agreement to arbitrate or any provision whatsoever addressing arbitration. *See generally* TLA (attached as Ex. 1 to the Declaration of Katherine M. Turner (Turner Decl.), filed herewith). Nor does the TLA incorporate by reference any external arbitration provisions or agreements. Moreover, plaintiffs have not alleged—nor could they— the existence of any other agreement with AB Sciex containing an arbitration provision.

2. <u>The Stock and Asset Purchase Agreement (SAPA) contains an arbitration provision, but AB Sciex is not a party to that agreement.</u> Plaintiffs also have asserted a single claim against DHTD for breach of contract, in which they allege, in essence, that DHTD is obligated to "cause" AB Sciex to comply with the TLA. Compl. ¶¶ 53–58. Plaintiffs' breach of contract claim against DHTD is based on Section 11.16 of the SAPA between plaintiff Life Tech, DHTD, and Danaher Corporation. That agreement—unlike the TLA—contains an arbitration provision requiring <u>the parties to the SAPA</u> to arbitrate "any dispute, controversy or claim arising out of, relating to or in connection with th[e] [SAPA] or any other Transaction Document (including any schedule or exhibit hereto and thereto) or the breach, termination or validity thereof or the negotiation, execution, or performance thereof." SAPA § 11.6(a) (relevant portions attached as Ex. 2 to Turner Decl.). DHTD thus has not objected to arbitration of the claim against it. AB Sciex, in contrast, is not a party to or signatory of the SAPA, and therefore it has objected to plaintiffs' efforts to invoke Section 11.6 of the SAPA against AB Sciex.[1]

## **PROCEDURAL HISTORY**

1. On January 18, 2011, plaintiffs filed their complaint in this action. The next day, they moved for a preliminary injunction prohibiting AB Sciex from engaging in certain uses of

---

[1] Plaintiff Applied Biosystems, LLC is also not a party to the SAPA and has not established any basis permitting it to invoke the SAPA's arbitration provision.

the licensed trademarks.  This Court ultimately denied that motion.  *See* Mem. Op. & Order [Dkt. #44].

2.     Defendants answered plaintiffs' suit on March 4, 2011.  In the parties' proposed scheduling order, submitted to the Court on March 29, 2011, the parties informed this Court of their disagreement regarding whether AB Sciex is subject to arbitration.   Joint Proposed Scheduling Order [Dkt. #42] at 3.  Plaintiffs wrote that to obtain resolution of that disagreement, they "would have to file a motion to compel arbitration; both sides would submit briefing on the motion; and the Court would have to rule on the issue." *Id.*  (emphasis added).  Because the parties had agreed to participate in a mediation, which could moot the arbitrability dispute, "plaintiffs request[ed] the Court to defer consideration of whether AB Sciex is subject to § 11.6 until after the mediation." *Id*. at 4.   The Court entered the Joint Proposed Scheduling Order on March 31, 2011.  Joint Scheduling Order [Dkt. #43].

3.     Notwithstanding their request that the Court "defer consideration of whether AB Sciex" is subject to arbitration until after the mediation, on April 22, 2011, before the mediation, plaintiffs filed a Demand for Arbitration Before JAMS against both DHTD and AB Sciex. Despite their earlier acknowledgement that the Court "would have to rule on the issue" of arbitrability, plaintiffs asked the arbitral tribunal instead to rule on the question of whether AB Sciex is subject to arbitration.  *See, e.g.*, Letter from T. Christopher Donnelly to Tobin J. Romero (May 13, 2011) (Donnelly Letter) (attached as Ex. 3 to Turner Decl.) at 2 (stating plaintiffs' new position that the arbitration panel has jurisdiction over arbitrability of the claims).  AB Sciex informed plaintiffs of its objection not only to their efforts to arbitrate their claims against AB Sciex, but also to their attempt to submit the question of arbitrability to the arbitral tribunal,

rather than this Court.  *See, e.g.*, E-mail from Tobin Romero to T. Christopher Donnelly (May 12, 2011, 4:03 p.m.) (attached as Ex. 4 to Turner Decl.).

4.       In keeping with the Joint Scheduling Order, AB Sciex deferred seeking adjudication by this Court of the question of arbitrability until after the mediation.   The mediation took place on May 19, 2011, and did not result in resolution of plaintiffs' claims.  AB Sciex now files the present motion so this Court can resolve the question that the parties agreed it would have to decide—whether AB Sciex is bound to arbitrate.

## ARGUMENT

As the Supreme Court has recently recognized, the federal policy favoring arbitration "cannot be divorced from the first principle that underscores all of our arbitration decisions: Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857–58 (2010) (emphasis in original) (citation and internal quotations omitted).  AB Sciex did not agree—either in the TLA or elsewhere—to arbitrate any claims against it arising from the TLA, and therefore cannot be subject to arbitration.  *See Ross v. Am. Express Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (holding that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit" (alteration in original) (quotations omitted)).

## I.       THIS COURT MUST DECIDE THE QUESTION OF ARBITRABILITY.

It is the role of this Court—and not any arbitral tribunal—to resolve the question whether AB Sciex can be bound by an arbitration clause found in an agreement to which it is not a party: "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83

4

(2002) (alteration, emphasis, and internal quotations omitted); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (brackets and quotations omitted)).  The principle that arbitrability "is typically an issue for judicial determination" is "well settled."  *Granite Rock*, 130 S. Ct. at 2855 (quotations omitted); *see also Telenor Mobile Comm'cns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) ("[A]rbitrability questions are presumptively to be decided by the courts, not the arbitrators themselves.").

In this case, where AB Sciex is not a party or a signatory to the agreement containing the arbitration clause invoked against it—here, Section 11.6 of the SAPA—there can be no contention that AB Sciex "clearly" or "unmistakably" intended the question of whether it is bound to arbitrate to be resolved by the arbitral tribunal, rather than by the Court.  Plaintiffs concede in their Arbitration Demand that AB Sciex is not a party to the SAPA—which alone contains the arbitration clause they invoke.  The TLA—the sole agreement at issue to which AB Sciex is a party—includes no provision regarding arbitration, and thus can hardly be said to manifest a "clear" and "unmistakable" intent of <u>AB Sciex</u> to arbitrate the initial question of arbitrability.

Indeed, the Supreme Court has held that if the parties dispute whether <u>any</u> agreement to arbitrate even exists between the parties or was formed in the first instance (as opposed to whether an agreement to arbitrate extends to a particular issue or claim), a court <u>must</u> decide the issue of arbitrability.  *Granite Rock*, 130 S. Ct. at 2858 (where a party contests the "formation" of any agreement to arbitrate, "the court must resolve the disagreement").  Thus, "*Granite Rock* reconfirms this circuit's well-established precedent that where a party challenges the very existence of the contract containing an arbitration clause, a court cannot compel arbitration

without first resolving the issue of the contract's existence." *Dedon GmbH v. Janus et Cie*, No. 10-4331-cv, 2011 WL 31868, at *1–2 (2d Cir. Jan. 6, 2011); *see also Di Martino v. Dooley*, No. 08 Civ. 4606(DC), 2009 WL 27438, at *3 (S.D.N.Y. Jan. 6, 2009) ("where the dispute concerns whether a certain *party* is subject to an arbitration clause, either because that party disputes the existence of an agreement between it and the party seeking to invoke arbitration, or because that party disputes that it is subject to the agreement to arbitrate . . . . the Court—rather than the arbitrator—must decide whether the dispute is arbitrable" (emphasis in original)).  That is the exact situation here:  plaintiffs cannot point to the existence of any contract between plaintiffs and AB Sciex containing an agreement to arbitrate, let alone to any clear and unmistakable indication of intent to have the initial issue of arbitrability decided by an arbitrator.

Instead, plaintiffs rely on an arbitration provision contained in the SAPA—an agreement between Life Tech and DHTD, the latter of which plaintiffs allege to be an "affiliate" of AB Sciex.[2]  In *Masefield AG v. Colonial Oil Industries, Inc.*, No. 05 Civ. 2231(PKL), 2005 WL 911770, at *2 (S.D.N.Y. Apr. 18, 2005), the Court addressed this circumstance, where plaintiffs (in that case, the parties disputing arbitrability) "ha[d] not entered into any contract with defendant containing an arbitration provision, much less demonstrated any intention to give the Tribunal the power to determine whether they agreed to arbitrate with defendant," and defendant (in that case, the party seeking to arbitrate) invoked an arbitration agreement it had with an affiliate of plaintiffs.  *Id.*  The Court noted that it was "unwilling to interpret the Contract as anything more than a manifestation of the intentions of [the affiliate company] and defendant," and therefore "reject[ed] defendant's contention that the arbitration provision clearly and

---

[2] The SAPA provides that disputes between parties to the SAPA are subject to arbitration under the JAMS International Arbitration Rules, which provide that the arbitral tribunal may rule on the arbitrability of a claim.  But those Rules are irrelevant here because AB Sciex is not a party to the SAPA and, therefore, is not bound by the provision in the SAPA that those Rules apply.

unmistakably reveals <u>plaintiffs</u>' desire to arbitrate arbitrability with defendant." *Id.* (emphases added). Because there was no contract containing an arbitration provision between plaintiffs and defendant—as opposed to plaintiffs' affiliate and defendant—there was no basis at all for discerning plaintiffs' intent regarding who should decide arbitrability, let alone a "clear" and "unmistakable" basis. *See id.*; *see also Rep. of Iraq v. ABB AG*, No. 08 Civ. 5951(SHS), ___ F. Supp. 2d ___, 2011 WL 781192, at *3–4 (S.D.N.Y. Mar. 3, 2011) (rejecting reliance on arbitration clause in contract between defendant and another party and finding that "[t]here is simply no clear and unmistakable evidence from the arbitration agreement that [<u>plaintiff</u>] and [<u>defendant</u>] agreed to arbitrate the issue of whether their dispute is arbitrable for the simple reason that there is <u>no</u> contract between them" (emphases added)); *Di Martino*, 2009 WL 27438, at *3 (question whether individual board members were bound by an arbitration clause signed by the board was a dispute regarding "whether a certain *party* is subject to an arbitration clause" in the first instance, which is a matter to be decided by the court (emphasis in original)).

Under these precedents, it is well-established that where a party seeks to enforce an arbitration clause against a non-signatory to the agreement containing the clause, the Court must decide the issue of arbitrability. Indeed, plaintiffs previously acknowledged that "<u>the Court would have to rule on the issue</u>." Joint Proposed Scheduling Order [Dkt. #42] at 3 (emphasis added).

For these reasons, arbitrability is an issue for this Court to decide.

## II.    AB SCIEX IS NOT A PARTY TO THE SAPA AND THEREFORE IS NOT SUBJECT TO ITS ARBITRATION PROVISIONS.

Plaintiffs seek to enforce Section 11.6 of the SAPA against AB Sciex, even though AB Sciex is a not a party to, or signatory of, that agreement. Thus, plaintiffs' effort to arbitrate their claims arising from the TLA against AB Sciex fails "the first principle that underscores all of

[the Supreme Court's] arbitration decisions," that is, that "[a]rbitration is strictly a matter of consent." *Granite Rock*, 130 S. Ct. at 2857–58 (internal quotations omitted).  Because AB Sciex has not consented to arbitrate any dispute with plaintiffs, it cannot be compelled to do so. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("Arbitration is contractual by nature—a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (internal quotations omitted)).

The issue of whether a party has consented to arbitration is determined by "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.[3]  As noted above, the TLA contains a choice-of-law provision—evidencing that the parties considered dispute resolution issues—but no arbitration clause.  Moreover, the TLA contains an integration clause, stating that "[t]his Agreement (including the Schedules constituting a part of this Agreement) and any other writing signed by the parties that specifically references this Agreement constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof."  TLA § 9.1 (emphasis added). The SAPA is not a "writing signed by the parties" to the TLA, because AB Sciex did not sign the SAPA.  Thus, by the plain terms of the TLA, the SAPA cannot be considered part of the agreement between plaintiffs and AB Sciex.

Plaintiffs seek to look beyond the contract that they did enter with AB Sciex (and from which their claims arise), and instead rely on the SAPA, notwithstanding the integration clause in Section 9.1 of the TLA.  Yet plaintiffs have not advanced any viable contract theory to bind AB

---

[3] In the TLA, AB Sciex and plaintiffs selected New York law, "[e]xcept where Federal law controls," as the governing law for all claims or causes of action based upon, arising out of, or relating to the TLA.  TLA § 9.8.

Sciex, as a non-signatory, to the arbitration provisions of the SAPA.  The only arguments that they have offered, *see* Donnelly Letter at 1, are circular:  that AB Sciex, a non-signatory of the SAPA, should be subject to the SAPA because of provisions found in the SAPA.  When plaintiffs look to the TLA—the only contract to which AB Sciex agreed to be bound—they come up empty.

In arguing that AB Sciex is subject to arbitration, plaintiffs invert the incorporation-by-reference doctrine:  they argue that because the SAPA's arbitration clause applies to disputes relating to the TLA, the TLA should be deemed to incorporate the SAPA's arbitration clause. *See* Donnelly Letter at 1.  Plaintiffs have it backward:  whether the SAPA refers to the TLA is not the question, because AB Sciex is not a party to the SAPA.  Instead, the relevant question is whether the TLA, to which AB Sciex is a party, incorporates the SAPA's arbitration provision by reference.  *See Thomson–CSF*, 64 F.3d at 777 (to determine applicability of incorporation-by-reference doctrine, question is whether the agreement containing the arbitration clause "was incorporated into any document which [the non-signatory] adopted").  It does not.  Because the TLA does not make any reference to the SAPA's arbitration provision, AB Sciex "cannot be bound under an incorporation theory."  *Id.*; *see also* 1 Thomas H. Oehmke, *Commercial Arbitration* § 8.1 (2011), *available at* http://www.westlaw.com, CMLARB § 8:1 ("Under general principles of contract law, an agreement may incorporate another document (which mandates arbitration) by making [a] clear, unequivocal, and direct reference to it . . . .).

Plaintiffs' second argument is also logically flawed.  Plaintiffs have argued that DHTD, pursuant to Section 11.16 of the SAPA, is required to "cause" AB Sciex "to take or omit to take" whatever actions are required of AB Sciex by the SAPA or any Ancillary Agreement.  Thus, they argue that DHTD is required to cause AB Sciex to submit to the SAPA's arbitration clause.  The

problem with this argument is twofold.  First, nothing in the SAPA purports to require AB Sciex to be bound by the arbitration clause; instead, that clause applies to "parties."  SAPA § 11.6. Therefore, even if DHTD were required to "cause" AB Sciex to comply with provisions of the SAPA, that obligation would <u>not</u> include causing AB Sciex to arbitrate.  Second, DHTD's purported agreement to "cause" AB Sciex to take or refrain from taking certain actions is beside the point.  <u>The relevant question is whether AB Sciex consented to arbitration</u>, not whether DHTD agreed to attempt to cause AB Sciex to arbitrate.  And, on this point, there is no evidence that AB Sciex agreed to be bound by Section 11.6 of the SAPA.

## III.   AB SCIEX WILL SUFFER IRREPARABLE HARM IF PLAINTIFFS ARE NOT ENJOINED FROM PURSUING ARBITRATION AGAINST IT.

Because AB Sciex is a non-signatory to the SAPA and Plaintiffs cannot show that AB Sciex consented to be bound by the SAPA's arbitration provision or is otherwise subject to that provision under any recognized contractual theory, allowing the arbitration to proceed against AB Sciex would result in irreparable harm to AB Sciex.

In this Circuit, there is a presumption of irreparable harm when a party not covered by an arbitration agreement is forced to arbitrate pursuant to such agreement.  *See, e.g.*, *Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam).  Thus, the district court has recognized that "[a] person against whom an arbitration has been initiated, who has not agreed to arbitrate, directly or by operation of law, is deemed to be irreparably damaged." *Zarepta Chem., K.S. v. Solae, LLC*, No. 05 CV 8265, 2005 WL 4756407, at *3 (S.D.N.Y. Oct. 26, 2005); *see also ProShares Trust v. Schnall*, 695 F. Supp. 2d 76, 80 (S.D.N.Y. 2010) ("a party necessarily suffers irreparable harm if forced to expend time and resources arbitrating an issue that is not arbitrable" (internal quotations omitted)); *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (enjoining arbitration and stating that "[i]t is beyond dispute that

irreparable harm would result if [plaintiff] were compelled to arbitrate defendants' claims without having agreed to arbitration"), *aff'd*, 405 F. App'x 550 (2d Cir. 2011).

AB Sciex has not consented to arbitration.  Forcing it to arbitrate would deny AB Sciex its due process right to have the claims against it "adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented."  *UBS Sec.*, 684 F. Supp. 2d at 354. For this harm, no adequate remedy at law exists.  *See id.*

## CONCLUSION

For the foregoing reasons, defendant AB Sciex respectfully requests that this Court enjoin plaintiffs from pursuing arbitration against AB Sciex of any claims or issues asserted in the Complaint in the above-captioned action and from proceeding with their purported Demand for Arbitration Before JAMS against AB Sciex, and grant such other relief as this Court may deem just and proper.

Dated:  May 20, 2011                    Respectfully submitted,

                                        WILLIAMS & CONNOLLY LLP

                                        By:    /s Katherine M. Turner
                                               Dane H. Butswinkas (*pro hac vice*)
                                                  dbutswinkas@wc.com
                                               Tobin J. Romero (TR8896)
                                                  tromero@wc.com
                                               Katherine M. Turner (*pro hac vice*)
                                               725 Twelfth Street, N.W.
                                               Washington, DC  20005
                                               Telephone:  (202) 434-5000
                                               Facsimile:  (202) 434-5029
                                               *Attorneys for Defendant AB Sciex Pte. Ltd. and*
                                               *DH Technologies Development Pte. Ltd.*

**CERTIFICATE OF SERVICE**

I, Katherine M. Turner, hereby certify that on the 20th day of May, 2011, I caused the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AB SCIEX PTE. LTD.'S MOTION TO ENJOIN ARBITRATION AS AGAINST AB SCIEX PTE. LTD. to be served on all counsel of record via ECF.

s/ Katherine M. Turner
Katherine M. Turner
